IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ED WILSON,                          )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          1:19CV1169
                                    )
UNC HEALTH CARE SYSTEM,             )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is the Motion to Dismiss Amended Complaint, (Doc. 12), filed by Defendant UNC Health Care System. Plaintiff's Amended Complaint, (Doc. 9), alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; the Age Discrimination in Employment Act of 1967 ("ADEA"); the North Carolina Equal Employment Practices Act, N.C. Gen Stat. § 143-422.1; and N.C. Gen. Stat. § 116-37(d). Defendant moves to dismiss Plaintiff's Complaint on the grounds of Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (Doc. 12.) For the reasons set forth herein, the court will grant Defendant's motion to dismiss as to all federal claims. The court declines to exercise supplemental jurisdiction over the remaining state claim.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Parties

Plaintiff Ed Wilson began working as a Sterile Processor Tech II for Defendant UNC Health Care System ("UNC HCS") in February of 2015, specializing in cart assembly. (First Amended Complaint ("Am. Compl." (Doc. 9) ¶ 9.) Defendant UNC HCS is a nonprofit health care system created by N.C. Gen. Stat. § 116-37 and owned by the State of North Carolina. (Id. ¶ 2.)

### B.   Factual Background

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016), this court may consider documents that are incorporated into the complaint by reference. A document is incorporated by reference if it is integral to the complaint, see id. at 166, and the plaintiff does not challenge its authenticity. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully

- 2 -

respond to) facts newly introduced by the <u>defendant</u> in conjunction with motion of dismissal."). Other courts within the Fourth Circuit have considered Equal Employment Opportunity Commission ("EEOC") charges attached to motions to dismiss, provided plaintiffs relied on those documents in their complaints and did not contest the exhibits' authenticity. <u>See, e.g.</u>, <u>Alexander v. City of Greensboro</u>, No. 1:09-CV-934, 2011 WL 13857, at *6-8 (M.D.N.C. Jan. 4, 2011); <u>Cohen v. Sheehy Honda of Alexandria, Inc.</u>, No. 1:06cv441, 2006 WL 1720679, at *2 (E.D. Va. June 19, 2006) (EEOC charge was integral to complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

This court finds that Plaintiff's Complaint incorporates by reference both of Plaintiff's Charges of Discrimination to the EEOC because they are both integral and uncontested. Defendant attached both charges as exhibits to its Memorandum in support of the Motion to Dismiss. (Def.'s Br.) (Doc. 13).) First, the Charges of Discrimination are integral to Plaintiff's Complaint. The allegations in his Complaint are based upon incidents described in both the original charge and amended charge, (<u>compare</u> Am. Compl. (Doc. 9), <u>with</u> Def.'s Br. (Doc. 13-2), Ex. B, Amended Charge ("Am. Charge"); Def.'s Br., (Doc. 13-1), Ex. A, Original Charge ("Original Charge"). Moreover, this

- 3 -

court's jurisdiction is predicated on Plaintiff having filed the Charges of Discrimination. 42 U.S.C. § 2000e-(5)(f).

Second, Plaintiff does not challenge the authenticity of the Charges of Discrimination introduced by Defendant. Plaintiff refers to the Charges of Discrimination in his Complaint, (see Am. Compl. (Doc. 9) ¶¶ 44, 68, 77), and in his response to Defendant's Motion to Dismiss, (see Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 17) at 4.)[1] This court will therefore consider the facts contained within the Charges of Discrimination as part of Plaintiff's Complaint.

The facts, construed in the light most favorable to Plaintiff, are as follows.

In 2016, one of Plaintiff's supervisors, Bryan Keller ("Mr. Keller"), began to harass Plaintiff. (Am. Compl. (Doc. 9) ¶ 10.) Mr. Keller frequently made sexually-charged comments to Plaintiff, ranging from requests to "spend time together" to claiming he could "make [Plaintiff's] job a lot easier." (Id. ¶ 11.) Many of Mr. Keller's comments urged Plaintiff to socialize with Mr. Keller outside of the office. (Id.) Mr. Keller also made non-sexual comments toward Plaintiff,

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

referring to him as "old," "slow," and "Special Ed," (id. ¶ 13), and at some point, claiming that Plaintiff needed to be getting "a retirement check." (Am. Charge (Doc. 13-2) ¶ 4.) Meanwhile, Mr. Keller also began following Plaintiff into the office bathroom multiple times per week, looking at Plaintiff over urinals or stalls. (Am. Compl. (Doc. 9) ¶ 12.) Plaintiff asked Mr. Keller to stop making inappropriate comments and following Plaintiff into the bathroom. (Am. Charge (Doc. 13-2) ¶ 6.) Plaintiff complained to manager Paul Byers ("Mr. Byers") about Mr. Keller on multiple occasions. (Id.) On March 15, 2017, Plaintiff told Mr. Byers about Mr. Keller following him into the bathroom. (Id.) Plaintiff also complained to Human Resources ("HR") about Mr. Keller's comments and actions in 2016 and 2017, including once in July 2017. (Id. ¶ 8.)

Plaintiff himself was the subject of many written warnings from Mr. Keller, who submitted multiple disciplinary actions of questionable authenticity against Plaintiff. (Am. Charge (Doc. 13-2) ¶ 8.) In addition to including false allegations in the warnings, Mr. Keller occasionally forged Plaintiff's signature. (Id.)

In September of 2017, Plaintiff received an annual performance review deeming him a "valued contributor" who "consistently meets and occasionally exceeds expectations." (Am.

Compl. (Doc. 9) ¶ 19.) Soon thereafter, Plaintiff was switched within his department to the sterile instrument area. (Id. ¶ 20.) Plaintiff was not trained for his duties in the sterile instrument area.[2] (Id.) After his transfer, Plaintiff received warnings from several other supervisors. In December of 2017, Mr. Byers wrote Plaintiff up for tardiness and failing to clock out, which Plaintiff disputed in another complaint to HR. (Am. Charge (Doc. 13-2) ¶ 11.) Another manager, Ms. Jocelyn Brown ("Ms. Brown"), submitted multiple disciplinary actions against Plaintiff as well, both before and after his transfer. (Id. ¶¶ 9, 12.) Plaintiff also disputed Ms. Brown's claims with HR and another supervisor, Mr. Mark Harris ("Mr. Harris"). (Id. ¶ 12.)

Though he requested multiple times for additional training for his new role, Plaintiff was denied each time. (Am. Compl. (Doc. 9) ¶¶ 26, 27, 33.) In a phone call with Mr. Byers on December 19, 2017, Plaintiff once again requested training, but Mr. Byers claimed he "was already trained in this area because of his past experience." (Id. ¶¶ 27, 28.) Mr. Byers then asked

---

[2] While Plaintiff alleges he received no training for this position, his pleading suggests that Plaintiff worked in this position at an earlier date. (Am. Compl. (Doc. 9) ¶ 28.) Nevertheless, this court accepts Plaintiff's allegation that he had not been trained for this role.

Plaintiff whether he had spoken to employee relations. (Id. ¶ 29.) Two days later, Plaintiff received another warning describing conduct that was partially inaccurate and partially due to his inadequate training. (Id. ¶¶ 25, 26.)

Plaintiff got in a verbal altercation with Zelda Spivey ("Ms. Spivey") on January 30, 2018, in which Ms. Spivey berated Plaintiff and later accused Plaintiff of berating her instead. (Id. ¶ 30.) Mr. Keller suspended Plaintiff on February 2, 2018, due to the altercation with Ms. Spivey. (Id. ¶ 31.) Plaintiff then complained to HR about Ms. Spivey's misrepresentation of the incident. (Id.) Ten days later, Plaintiff met with Mr. Harris, Mr. Byers, and another individual regarding the suspension. (Id.) Plaintiff again raised concerns about his training in this meeting. (Id. ¶ 33.) At least one participant on the call at this point recommended that Plaintiff be dismissed. (Id.) Mr. Keller was not present on this call. (Id. ¶¶ 31-33.) About a month later, on March 17, 2018, Mr. Harris called Plaintiff to inform him the decision had been made to officially terminate him. (Id. ¶ 34.)

Plaintiff proceeded through Defendant's grievance process following his termination. (Id. ¶ 35.) Plaintiff alleges that interviews during this process demonstrated universal and consistent problems with training, management, and organization

- 7 -

throughout the department. (Id. ¶ 36.) Notably, Plaintiff was the only employee in the department who was terminated between February 2017 and March 2018, even though many other employees also made mistakes. (Id. ¶¶ 36, 37.)

## C. **Procedural History**

Plaintiff filed his first Charge of Discrimination and retaliation due to race and age with the EEOC on June 28, 2018. (See Original Charge (Doc. 13-1).) On a disputed date in September of 2018, Plaintiff submitted an amended charge to the EEOC. (See Am. Charge (Doc. 13-2).) This amended charge alleged new facts, claiming Plaintiff was the victim of sexual harassment and sex discrimination. (Id.)

Plaintiff originally filed his Complaint on October 24, 2019, in Orange County Superior Court. (Complaint (Doc. 3) at 10.) On November 27, 2019, Defendant UNC HCS filed a Notice of Removal with this court. (Doc. 1.) This court has jurisdiction pursuant to 28 U.S.C. § 1331. On December 4, 2019, Defendant filed its initial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(1), and 12(b)(2). (Doc. 6.) Plaintiff subsequently amended his Complaint in order to add claims for age discrimination under the ADEA and breach of contract under state law. (Am. Compl. (Doc. 9).) Defendant's initial Motion to Dismiss, (Doc. 6), was denied without prejudice. Defendant then

- 8 -

filed a Motion to Dismiss Plaintiff's Amended Complaint on the same grounds as its first Motion to Dismiss. (Doc. 12); Plaintiff responded, (Doc. 17); and Defendant replied, (Doc. 18). This matter is ripe for adjudication.

## II.  **STANDARD OF REVIEW**

Defendant moves to dismiss each of Plaintiff's harassment and retaliation claims under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When considering a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept

- 9 -

legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Though employment discrimination complaints must meet the plausibility standard, a plaintiff is not required to make out a prima facie case of discrimination at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff need only plead facts that permit the court to reasonably infer each element of the prima facie case. McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race).

## III. **ANALYSIS**

Plaintiff alleges Defendant discriminated against him on the basis of sex and age, then retaliated against him for reporting that discrimination. (Am. Compl. (Doc. 9) ¶¶ 47, 67.) This court will address each of Plaintiff's four discrimination and harassment claims individually. Plaintiff also brings, but has abandoned (Pl.'s Resp. (Doc. 17) at 18), a wrongful termination claim under the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. 143-422.1, et seq. Finally,

- 10 -

Plaintiff brings a state law claim for breach of contract, alleging Defendant breached its employment contract with Plaintiff due to the aforementioned discrimination. (Am. Compl. (Doc. 9) ¶¶ 74, 78.)

## A. **Plaintiff's Sexual Harassment Claim**

### 1. **Timeliness**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before bringing a Title VII case in federal court, a plaintiff must first exhaust his available administrative remedies concerning that claim by filing a charge with the EEOC.

The enforcement provisions of Title VII state that "[a] charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10, (2002) (stating that "a litigant has up to 180 . . . days after the unlawful practice happened to file a charge with the EEOC [when litigant has not also filed complaint with state agency]"); Lane v. Lucent Techs., Inc., 388 F. Supp. 2d 590, 598

- 11 -

(M.D.N.C. 2005). Moreover, "each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. "Failure to timely file a charge with the EEOC bars the claim in federal court, and courts have strictly enforced this requirement." Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 411 (M.D.N.C. 2011) (citing McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994); Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d 587, 597 (D. Md.), aff'd, 230 F.3d 1354 (4th Cir. 2000) (per curiam) (unpublished table decision)).

Here, the alleged discriminatory conduct by Defendant occurred, at latest, on the date of Plaintiff's termination: March 17, 2018. (Am. Compl. (Doc. 9) ¶ 34.) Plaintiff therefore had until September 13, 2018, to file administrative charges with the EEOC. Plaintiff then had the ability to file suit in federal court based on "the charge's contents." Jones v. Calvert Grp. Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Plaintiff's only charge filed within the 180-day timeline was his original charge, which did not allege sexual harassment or retaliation for reporting sexual harassment. (See Original Charge (Doc. 13-1).)

Plaintiff's first EEOC complaint only alleges discrimination and retaliation on the basis of race and age.

- 12 -

(Id.) Defendant does not dispute that this charge was timely. (Def.'s Br. (Doc. 13) at 16.) However, Plaintiff's original EEOC charge contains no facts or allegations remotely related to sexual harassment or retaliation based on reporting thereof. Plaintiff's Complaint before this court, however, alleges sexual harassment and retaliation to complaints of sexual harassment. (Am. Compl. (Doc. 9) ¶ 47.) All facts related to the allegation of sexual harassment are contained only in the subsequent amended charge. (Am. Charge (Doc. 13-2).)

Furthermore, this court finds that the amended charge was not filed with the EEOC within the required 180-day time frame. Even assuming arguendo that Plaintiff is correct that the proper date of the charge was September 16, 2018, (Pl.'s Resp. (Doc. 17) at 7), the charge was still filed more than 180 days after the termination of Plaintiff's employment with UNC HCS on March 17, 2018. This court need not adjudicate which date applies: either way, the charge was filed more than 180 days after any possible allegation of sexual harassment. Plaintiff therefore failed to pursue this avenue of complaint with the EEOC in a timely manner.

Given the untimeliness of the amended charge, Plaintiff argues that its filing date should relate back to the date of the timely Original Charge. (Id. at 9.) However, relation back

- 13 -

specifically encompasses amendments in which "the charging party makes no new factual allegations but rather solely revises his or her charge to allege that the same facts constitute a violation of a different statute." EEOC v. Randstad, 685 F.3d 433, 444 (4th Cir. 2012). In Randstad, the amended charge "did not allege any discriminatory incidents other than those already included in the original charge." Id. at 445. In this case, however, the amended charge states a litany of new facts, including the identity of Plaintiff's harasser and all comments attributed to him. (See Am. Charge (Doc. 13-2).)  Allegations of Mr. Keller following Plaintiff into the bathroom also do not appear until the amended charge. (Id. ¶ 5.)

Plaintiff recognizes a primary purpose of the 180-day requirement is to provide Defendant "ample notice" for investigation. (Pl.'s Resp. (Doc. 17) at 9); see Sydnor v. Fairfax County, 681 F.3d 591, 593 (4th Cir. 2012). Yet, relation back in this instance would defy the notice-giving purpose of the timeliness rule: UNC HCS could not have reasonably investigated sexual harassment allegations, or retaliation in response to such allegations, based on the facts alleged in the original charge. Since the facts of Plaintiff's amended charge do not "reasonably relate[]" to those of the original charge, this court will not find that the relevant date for the amended

- 14 -

charge relates back. See id. at 595 ("The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related.'"); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (failing to find exhaustion where charge alleged racial discrimination but the complaint involved sex discrimination).

Nor do principles of equity require a finding of relation back. In Title VII claims, the 180-day window "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted). Equitable tolling is not permitted, however, where a plaintiff "failed to exercise due diligence" – it does not extend to "garden variety claim[s] of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Plaintiff fails to demonstrate how this case meets the extraordinary circumstances required for equitable tolling, as Plaintiff alleges no unusual obstacles in his pursuit of filing the amended charge.

Plaintiff's Complaint with the court cannot allege a new type of discrimination and a different set of facts from his one timely EEOC charge. Since Plaintiff failed to exhaust his administrative remedies in a timely manner, this court will

- 15 -

dismiss Plaintiff's sexual harassment charge under Fed. R. Civ. P. 12(b)(6).

## 2. **Plausibility**

Even if this court were to find Plaintiff's claim of sexual harassment timely and thus reviewable, his allegations would still fall short of establishing a plausible claim of sexual harassment. Plaintiff exclusively asserts a quid pro quo sexual harassment claim, which requires "a tangible employment action" that "resulted from a refusal to submit to a supervisor's sexual demands." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998). The Fourth Circuit has referred to this type of harassment claim as a "condition of work" claim, defining quid pro quo harassment as "a supervisor demand[ing] sexual consideration in exchange for job benefits." Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983) (quoting Henson v. City of Dundee, 682 F.2d 897, 908 n. 18 (11th Cir. 1982)).

Here, Plaintiff fails to allege a single instance in which a supervisor overtly demanded sexual consideration in exchange for job benefits. While Mr. Keller commented to Plaintiff about going "out for drinks" and "spend[ing] time together," these comments contained no overtly sexual content. (Am. Compl. (Doc. 9) ¶ 11.) Even if Mr. Keller's contextless reference to making Plaintiff's "job a lot easier" is interpreted as a sexual

- 16 -

demand, (id.), Plaintiff does not explain how this remark can be reasonably linked to Plaintiff's ultimate termination. Nor does Plaintiff identify when this comment was made in order to establish a temporal link to his termination.

Plaintiff does allege blatantly inappropriate conduct by Mr. Keller, including that Mr. Keller "would watch Plaintiff by looking under the stall or staring at him at the urinal." (Id. ¶ 12.) However, Plaintiff fails to plausibly connect this conduct to his eventual termination beyond "mere conclusory statements." Iqbal, 556 U.S. at 678. Even if Plaintiff could plausibly claim that Mr. Keller made "demands" of him, he fails to sufficiently allege any of Mr. Keller's conduct was related to his termination. Nor was Mr. Keller present on the February 2018 phone call in which "it was recommended that Plaintiff be dismissed." (Am. Compl. (Doc. 9) ¶ 33.) Thus, the claim of quid pro quo sexual harassment would be dismissed under Rule 12(b)(6) even if this court found that Plaintiff had exhausted his administrative remedies in a timely manner.

B.  **Retaliation for Reporting Sexual Harassment**

Title VII prohibits employers from "discriminat[ing] against any . . . employee[] . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C.

- 17 -

§ 2000e-3(a). Plaintiff complained to Human Resources about sexual harassment by Mr. Keller, and alleges he was terminated due to those complaints in violation of Title VII.

### 1. **Timeliness**

Defendant also raises the issue of timeliness with regard to Plaintiff's sexual harassment retaliation claim. Though Plaintiff does allege retaliation in his original charge, Plaintiff only claims he was subject to age and race discrimination. (See Original Charge (Doc. 13-1).) The original charge gives no notice to Defendant about the possibility of sexual harassment, sex discrimination, or any retaliation on that basis. (Id.) Thus, the same timeliness analysis applies as in Plaintiff's sexual harassment claim. See discussion supra Part III.A.1. The retaliation claim will also be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### 2. **Plausibility**

Once again, even assuming arguendo that Plaintiff's amended charge could relate back, Plaintiff has fallen short of plausibly alleging retaliation for reporting alleged sexual harassment. To establish a prima facie case of retaliation, Plaintiff must allege the facts to plausibly support three elements: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and

- 18 -

(3) that there was a causal link between the two events. <u>EEOC v.</u>
<u>Navy Fed. Credit Union</u>, 424 F.3d 397, 405-06 (4th Cir. 2005).
Defendant does not dispute that Plaintiff engaged in a protected
activity by making internal complaints regarding alleged sexual
harassment. (Def.'s Br. (Doc. 13) at 22.) Nor does Defendant
dispute that Plaintiff's eventual termination was an adverse
employment action. <u>Id.</u> At issue is whether Plaintiff plausibly
alleges a causal link between his sexual harassment reports and
his termination.

Proving causation at the pleading stage is "not []
onerous," and a plaintiff need not "show at the <u>prima facie</u>
stage that [his] protected activities were but-for causes of the
adverse action." <u>Strothers v. City of Laurel</u>, 895 F.3d 317, 335
(4th Cir. 2018). Nevertheless, a plaintiff must allege facts
that plausibly support an inference of causation. This may be
accomplished by alleging facts showing the employer took an
adverse action "soon after becoming aware" of protected
activity. <u>Id.</u> at 336; <u>see also</u> <u>Villa v. CavaMezze Grill, LLC</u>,
858 F.3d 896, 899, 901 (4th Cir. 2017) (discussing importance of
an employer's subjective knowledge since an adverse action must
be motivated by a desire to retaliate in order to be
actionable); <u>Carter v. Ball</u>, 33 F.3d 450, 460 (4th Cir. 1994)
(dealing with termination following notice employee filed EEOC

- 19 -

charge); <u>Welton v. Durham Cnty.</u>, No. 1:17CV258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018), <u>aff'd</u>, 718 F. Appx. 242 (4th Cir. 2019) (discussing <u>Strothers</u>, 895 F.3d at 335–36).

When a plaintiff attempts to allege causation via temporal proximity alone, the adverse employment action must be "very close" in time to the protected activity. <u>Clark Cnty. Sch. Dist.</u> <u>v. Breeden</u>, 532 U.S. 268, 273 (2001) (per curiam). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two." <u>Dowe v. Total Action Against Poverty in</u> <u>Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998).

Here, Plaintiff's termination was temporally distant from his complaints regarding sexual harassment. Plaintiff alleges generally that he reported this discrimination "in both 2016 and 2017." (Pl.'s Resp. (Doc. 17) at 12.) He wrote a note to Mr. Byers on March 15, 2017, saying that Mr. Keller "frequently followed [him] into the bathroom, looking under the bathroom stall." (Am. Charge (Doc. 13-2) ¶ 6.) Then "[l]ater, in July 2017, Plaintiff again complained about Mr. Keller following him into the bathroom." (Am. Compl. (Doc. 9) ¶ 18.) These are the only two specific dates Plaintiff alleges in which he reported sexual harassment. Plaintiff received his positive performance

- 20 -

review months after both of these complaints. (Id. ¶ 19.) Even assuming Plaintiff's complaints about sexual harassment continued after July 2017, Plaintiff does not allege that he reported harassment at a time close to his termination in March 2018. See Pl.'s Resp. (Doc. 17) at 13 (asserting claim "regardless of when Plaintiff last made a complaint about discriminatory conduct" rather than alleging any particular timing). Plaintiff cannot rely on temporal proximity alone to provide a causal link between his reports of harassment and his termination.

Plaintiff does plausibly contend that his HR complaints were causally connected to at least one written warning from December 21, 2017. (Id. at 12-13.) Two days prior, Mr. Byers had asked Plaintiff whether he "had gone to employee relations." (Am. Compl. (Doc. 9) ¶ 29.) The December 21 warning may be plausibly linked to Mr. Byers' revelation given their closeness in time. A warning can itself constitute the necessary "adverse employment action" if it has "a tangible effect on the terms or conditions of employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004). The written warning at issue here is comparable to poor performance evaluations in other cases: both warn of potential future consequences. Evaluations of this kind are "actionable only where the employer

- 21 -

subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Id. (quoting Spears v. Mo. Dep't. of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000)). A merely "conjectural" argument about how an evaluation or warning harmed Plaintiff is insufficient. James, 368 F.3d at 378.

Thus, the December warning cannot itself qualify as an "adverse employment action," as Plaintiff did not allege in a non-conclusory manner that it was a basis upon which he was terminated. No temporal link exists between the December warning and Plaintiff's eventual termination. Plaintiff was terminated three months after the December 21 warning, immediately following Plaintiff's suspension due to an unrelated incident in which he argued with another employee. (Am. Compl. (Doc. 9) ¶¶ 31, 34.) This three-month gap, particularly given the crucial intervening event which triggered termination, undermines Plaintiff's attempt to causally connect this particular warning with his termination. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that two and a half months was probably too long a lapse in time, barring other circumstances that explain the gap).

In spite of the temporal distance between Plaintiff's enumerated harassment complaints and his termination, the court

- 22 -

may still consider any other evidence linking the events.
Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).
(finding that if a substantial amount of time passes between the
protected activity and the retaliatory conduct, "courts may look
to the intervening period for other evidence of retaliatory
animus"). However, no other facts causally link Plaintiff's
harassment complaints about Mr. Keller to his eventual
termination. A plaintiff must provide "objective facts or dates
linking [his termination] to [his] protected conduct other than
[his] own opinions about [a] supervisor's motives." McLaughlin
v. Barr, No. 1:19-CV-318, 2020 WL 869914, at *10 (M.D.N.C.
Feb. 21, 2020). Plaintiff provides only his own opinions about
the cause of his termination, with objective facts and dates
that do not align with retaliation as a plausible motive. Thus,
Plaintiff falls short of alleging facts sufficient for a
retaliation case on this issue, even if his amended EEOC charge
had been timely.

     In the alternative, this court will dismiss the claim due
to failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### C.    Plaintiff's Age Discrimination Claim

     Plaintiff also contends that Defendant UNC HCS terminated
his employment on the basis of his age, in violation of the Age
Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et

- 23 -

seq. This complaint appears in his original charge and was therefore timely filed. (See Original Charge (Doc. 13-1).) The ADEA makes it "unlawful for an employer . . . to discharge . . . or otherwise discriminate against any individual [who is at least 40 years of age] with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Plaintiff claims specifically that he was wrongfully discharged and does not argue that he was subject to a hostile work environment. (Pl.'s Resp. (Doc. 17) at 14.)

There are two ways a plaintiff may state a claim for wrongful discharge. First, a plaintiff may plausibly allege he was discharged on the basis of his age via direct evidence "that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor" in the termination. Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982). Plaintiff does not allege any direct evidence of this kind. The only alleged conduct relating to Plaintiff's age was a series of comments by Mr. Keller referring to Plaintiff as "old" and claiming he "need[ed] to be getting a retirement check." (Am. Charge (Doc. 13-2) ¶ 4.) Plaintiff alleges that comments along these lines occurred for years. (Id.) While this may indicate animus on the part of Mr. Keller, Plaintiff fails to

- 24 -

plausibly link these comments to Plaintiff's ultimate termination in 2018.

Absent direct evidence of discriminatory termination, Plaintiff must at minimum allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman, 626 F.3d at 190. While Plaintiff need not establish a prima facie case at the pleading stage, Plaintiff must allege facts to plausibly support each of these elements. Overman v. Town of Hillsborough, No. 1:18-CV-1052, 2020 WL 435825, at *2 (M.D.N.C. Jan. 28, 2020) (finding that employee who discussed her imminent plans to retire due to her age, and was fired shortly thereafter, still fell short of plausibly stating a claim due to need for speculation by the court). Plaintiff does allege membership in a protected class of individuals above the age of forty, as the EEOC charges on record indicate that he is 52 years old.[3] (See Am. Charge (Doc. 13-2).) Plaintiff also demonstrates, and it is not disputed, that an adverse employment action was taken against him: termination. (Id.)

---

[3] Though Plaintiff fails to straightforwardly allege his age in the complaint and brief before this court, the EEOC charges incorporated by reference are sufficient to proceed with consideration of the claim.

Plaintiff also plausibly alleges he received different treatment from similarly situated employees. Plaintiff's Complaint acknowledges that although shortcomings in management and training were universal, Plaintiff was "the only employee consistently scrutinized for his mistakes." (Am. Compl. (Doc. 9) ¶ 37.) Plaintiff has demonstrated he was subject to heightened scrutiny and has alleged that many of the warnings he received were based on inaccurate facts. (Id. ¶¶ 26, 30) This, combined with the fact Plaintiff was the only employee terminated in that year, makes it plausible that Plaintiff was targeted or selectively scrutinized.

Plaintiff does not plausibly allege, however, that he was meeting the standard of satisfactory job performance. His sole positive assertion about his own job performance references to a positive review from September 2017. (Id. ¶ 19; see McLaughlin, 2020 WL 869914, at *7 (finding only one positive work evaluation, followed by subsequent complaints from other supervisors, was insufficient to allege satisfactory job performance). Plaintiff also states he was reassigned after that performance review to a position in which, by his own admission, "he needed further training" given he "last worked with scopes 10 to 15 years prior." (Am. Compl. (Doc. 9) ¶ 28.) Plaintiff does not allege the denial of training was unique to him or

- 26 -

discriminatory itself. Nor does Plaintiff allege that the reassignment was discriminatory or retaliatory.

Even accepting Plaintiff's allegation that many of his written warnings inaccurately criticized his job performance, Plaintiff alleges at least two legitimate warnings between the time of his last positive performance review and his termination, "for issues related to his timecard" and for "error[s] related directly to the lack of training he had received." (Id. ¶¶ 22, 26.) Plaintiff's only further allegation is that his employer's job performance expectations "were not legitimate," (Pl.'s Resp. (Doc. 17) at 16), because "Plaintiff's performance was consistent with the reasonable expectations of an employee with minimal training." (Am. Compl. (Doc. 9) ¶ 42.) No evidence is alleged regarding the technicality of Plaintiff's new position or shedding light on what made Defendant's expectations unreasonable aside from a general lack of training. Moreover, "[i]n determining whether an employee was performing at a level that met the employer's legitimate expectations, 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" Hill v. Se. Freight Lines, Inc., 877 F. Supp. 2d 375, 385 (M.D.N.C. 2012), aff'd, 523 F. App'x 213 (4th Cir. 2013) (quoting Rumsfeld, 328 F.3d at 149).

While Plaintiff is not required to prove a prima facie case of discrimination at this stage in the pleading process, Plaintiff merely states in a conclusory manner that he was terminated due to his age, failing to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Moreover, Plaintiff acknowledges several performance errors and even alleges himself that he was fired for "expressing concerns about inadequate training." (Compl. (Doc. 9) ¶ 43); see Tabb v. Bd. of Educ. of Durham Pub. Sch., No. 1:17CV730, 2019 WL 688655, at *8 (M.D.N.C. Feb. 19, 2019) ("[I]f the plausibility inquiry is to have any meaning, Plaintiff's allegations must also show that discrimination is a more likely reason . . . than any other 'obvious alternative explanation" that is present on the face of the complaint and "justified by [] nondiscriminatory intent.") (internal citations omitted).

Because Plaintiff has not plausibly alleged a claim of age discrimination, this court will dismiss the claim under Rule 12(b)(6).

### D.   **Retaliation for Reporting Age Discrimination**

Plaintiff's claim of retaliation for reporting age discrimination requires the same analysis as retaliation for reporting sexual harassment. See discussion supra Part III.B.

- 28 -

This claim, however, is present in the original charge and presents no timeliness issue. (Original Charge (Doc. 13-1).)

In order to plausibly state a claim of retaliation under the ADEA, a plaintiff must allege the same three prongs required under Title VII: that "(1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009). Once again, Defendant does not dispute that Plaintiff engaged in a protected activity by complaining about comments on his age. (Def.'s Br. (Doc. 13) at 27.) Nor does Defendant dispute that Plaintiff's termination was an adverse employment action. (Id. at 30.)

The crux of the court's analysis again depends on the causal connection between Plaintiff's HR complaints of age discrimination and his termination. Plaintiff's termination occurred in March 2018, and Plaintiff "made multiple complaints to human Resources about [sexually inappropriate conduct and derogatory comments in 2016 and 2017]." (Pl.'s Resp. (Doc. 17) at 1-2.) Plaintiff was not terminated, however, until 2018. (Id. at 7.) Throughout 2016, 2017, and 2018, Plaintiff also submitted a variety of separate complaints. (Am. Charge (Doc. 13-2) at

¶¶ 10-14, 15.) These complaints accused supervisors of lying about Plaintiff's job performance, (id. ¶¶ 11, 12, 14), and criticized Mr. Byers' rejection of Plaintiff's leave request, (id. ¶ 13), but did not reference age discrimination. Even assuming Plaintiff complained of age discrimination in December of 2017, he was not terminated until March 2018, approximately three months later. A temporal link does not plausibly state a claim of retaliation.

Plaintiff does not allege any facts which connect his age discrimination reports, temporally or otherwise, with his termination. Merely stating that Plaintiff was older than other employees, (Pl.'s Resp. (Doc. 17) at 16), and therefore his age must have been the cause of his firing, is not a sufficiently plausible basis for this claim. See, e.g., McCleary-Evans, 780 F.3d at 586 (finding in a Title VII racial discrimination claim that just because a fact "is consistent with discrimination . . . does not alone support a reasonable inference that the decisionmakers were motivated by bias").

Moreover, as previously discussed, Plaintiff's termination was triggered by his 2018 suspension due to an argument with

- 30 -

coworker Ms. Spivey.[4] The only individual who made age-related comments toward Plaintiff was his supervisor, Mr. Keller. (Am. Charge (Doc. 13-2) ¶ 4.) Plaintiff does not allege whether Mr. Keller was involved in the ultimate termination decision. Plaintiff offers no other evidence to demonstrate a causal link between his complaints about Mr. Keller calling him "old" and Plaintiff's eventual termination.

Thus, the court will dismiss this claim under Rule 12(b)(6) for failure to state a claim.

### E. Plaintiff's Wrongful Discharge Claim

The Plaintiff's claim of wrongful discharge has been abandoned (Pl.'s Resp. (Doc. 17) at 18), and will be dismissed at the behest of both parties. Id.; (Def.'s Br. (Doc. 13) at 29.)

### F. Plaintiff's Breach of Contract Claim

Plaintiff's breach of contract claim is based upon N.C. Gen. Stat. § 116-37(d). A district court may dismiss a state law claim brought before it under supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to

---

[4] At no point does Plaintiff allege that Ms. Spivey harassed him over his age, or that this incident related to his age in any way.

do so is completely within the court's discretion. <u>Carlsbad</u> <u>Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009); <u>Arbaugh</u> <u>v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to [28 U.S.C.] § 1367, over pendent state-law claims.").

Since this matter has not progressed past the motion-to-dismiss stage and only a state claim remains, the court declines to exercise its supplemental jurisdiction over Plaintiff's breach of contract claim.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, this court will grant Defendant's Motion to Dismiss as to all federal claims.

**IT IS THEREFORE ORDERED** that Defendant UNC Health Care System's Motion to Dismiss Amended Complaint, (Doc. 12), is **GRANTED,** that Claims One, Two, Three, Four, and Five are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6), and that Claim Six is **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

- 32 -

This the 28th day of September, 2020.

_____
United States District Judge